


**SO ORDERED.**

**SIGNED this 02 day of March, 2006.**

ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| **CHARLES LAWRENCE BORN, LORRAINE ANNE BORN,** | ) | **Case No. 04-14382 Chapter 7** |
| **Debtors.** | ) | |
| **EDWARD J. NAZAR, Trustee** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Adversary No. 05-5067** |
| **NORTH AMERICAN SAVINGS BANK CHARLES LAWRENCE BORN, LORRAINE ANNE BORN,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

In this adversary proceeding, the chapter 7 trustee invokes his § 544 hypothetical lien creditor powers to avoid North American Savings Bank's ("NASB") lien in the debtors' residence,

a mobile or manufactured home, as being unperfected under the Kansas Manufactured Housing Act.[1] After discovery, the parties stipulated that the lien was not properly perfected and that the trustee succeeds to it for the benefit of the creditors as provided for in § 551.[2] What remains at issue is the extent of the value of the estate's interest in the mobile home and the manner of allocating that interest and NASB's in the debtors' homestead. The trustee asserts that because the debtors wish to remain in the homestead and are current on their mortgage payment obligations, any valuation of the estate's interest should be based on an income valuation, *i.e.*, the present value of the stream of payments to be made on NASB's loan. NASB in turn asserts that the mobile home is worthless and that the trustee's interest is $0.

Jurisdiction

This avoidance proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(K) over which the Court has jurisdiction.[3]

Factual Background

The parties tried this matter to the Court on November 15, 2005. At that time, the trustee presented the testimony of Tom Tuttle, a real estate broker, concerning the value of the mobile home and the ground on which it sets. The trustee also presented the testimony of Derry Larson, a certified public accountant, concerning the present value of the anticipated stream of payments on NASB's note as allocated by the trustee to the estate. The Court received by stipulation a tax card issued by Sedgwick County, Kansas, valuing the land and all buildings separately and a written

---

[1] KAN. STAT. ANN. § 58-4202 *et seq.* (2004 Supp.).

[2] *See* Journal Entry, Dkt. 22.

[3] *See* 28 U.S.C. § 157(b)(1) and § 1334(b).

appraisal by Tagg Oleson commissioned by NASB. Both the trustee and NASB briefed the valuation issue and the Court, having considered the evidence and reviewed the law, is prepared to rule.[4]

Debtors reside in a 28 by 56 foot, 1986 mobile home which is set on a two acre tract they own in rural Sedgwick County, Kansas, near the town of Haysville. Two outbuildings are also situated on the tract which the Court assumes to be improvements to the real estate. As noted in the Court's Journal Entry dated August 22, 2005, NASB failed to perfect its security interest in the mobile home by noting its lien on the certificate of title and the lien was avoided and preserved for the benefit of the creditors under § 551.[5]

The valuation evidence may be summarized as follows. The Oleson appraisal[6], contained on the standard "BPO" (Brokers Price Opinion) form, attributes no value to the mobile home and approximately $18,000 to $20,000 to the tract and other buildings. Most telling in the Oleson appraisal is the accompanying explanatory note describing the mobile home:

> The outside looked rough with obvious deferred maintenance. The seller said they [sic] have 16 dogs and several cats. The interior had no flooring, and the sub-floor was permeated with urine. It was hard to breath with the strong ammonia smell . . . .

Oleson concluded that refurbishment would cost more than any resulting increase in value.

Tuttle's BPO is more charitable, attributing "shell" value to the mobile home, stating that it required stripping, sealing and remodeling.[7] Notwithstanding that, he assessed a value of $5,000

---

[4] *See* Dkt. 30 and 32.

[5] *See* KAN. STAT. ANN. § 58-4204 (2004 Supp.); Dkt. 22.

[6] Exhibit 7.

[7] Exhibit 6.

to the "shell" compared to a net value for the tract and other buildings of $12,000-$15,000.

Finally, the Sedgwick County Appraiser's office has assessed $25,310 to the buildings as a group, but does not break out the respective values of the mobile home and the outbuildings.[8] It assesses $23,130 in value to the land.

In addition to the appraisal evidence, the trustee offered Derry Larson's testimony that one-fourth of the total stream of payments that would be made on NASB's mortgage is $17,850 and the present value of this amount is $12,916.[9] It is this income-based valuation that the trustee asks the Court to assess to the estate's lien on the mobile home, effectively permitting the trustee to recover more than the appraised value of the mobile home.

Analysis

The Court concludes that the mobile home is worth no more than $5,000 and that the land and other building value is $20,000. The total value of the property is therefore $25,000 and the mobile home contributes 20 per cent of the value.

The trustee argues that he should be able to recover from NASB an amount equal to the proportion of value contributed by the mobile home multiplied by the present value of the stream of anticipated payments to be made by debtors on NASB's note. In making this assertion, the trustee notes that the collateral's value is less than the debt, the debt remains current, and the debtors are not in default. Therefore, he argues, the home is like a "going concern" or an income producing

---

[8] Exhibit 8.

[9] Exhibit 9. Larson utilized Tuttle's allocation of values for the mobile home and the land with buildings as a whole ($5,000/$20,000) to arrive at one-fourth for the estate's interest. Larson also utilized a mortgage payoff figure of $51,667.74 as of November 9, 2005 for the amount of the debt, rather than the $53,000 amount as of the petition date (August 6, 2004) per debtors' bankruptcy schedule D.

asset which must be valued accordingly. He considers that the payments the debtors make are in fact the proceeds of the lien and that he is entitled to collect the estates's share of the present value from NASB.

This creative argument unfortunately pales before Tenth Circuit precedent. In *In re Rubia*, the Tenth Circuit Bankruptcy Appellate Panel ("BAP") concluded that when a trustee avoids a lien and the Court preserves it for the benefit of the estate, all the trustee gets is a right to recover the property, not a right to collect the debt which underlies the lien.[10] In *Rubia*, the BAP stated that the trustee's interest in property subject to an avoided and preserved lien is the value of the collateral itself, up to the amount of the creditor's debt on the petition date.[11] In that case, the trustee sought to recover post-petition car payments made to a creditor that had failed to perfect its lien in a truck. During the pendency of the case, but prior to the lien being avoided, the debtors made their payments to the creditor. Once the bankruptcy court entered an order avoiding the creditor's lien, the trustee laid claim not only to the truck, but also to the post-petition payments. The bankruptcy court granted the creditor's motion to dismiss for lack of subject matter jurisdiction, holding that the post-petition payments were not property of the estate because they were made with post-petition earnings. Taking a different approach, the BAP concluded that the nature of the trustee's preserved lien interest "does not give the Trustee the right to collect [the creditor's] debt from the debtor postpetition."[12] Instead, the majority of the panel found that the trustee's rights only extended to the ability to recover the personal property and expressly rejected the dissent's view that the payments

[10] *Morris v. Vulcan Chem. Credit Union (In re Rubia)*, 257 B.R. 324 (10th Cir. BAP 2001), *aff'd* 23 Fed. Appx. 968 (10th Cir. 2001).

[11] *Id.* at 328.

[12] *Id.* at 327.

themselves were ”proceeds” of the preserved lien.[13]

Thus, *Rubia*’s holding effectively defeats the trustee’s argument here. By asserting that the preserved lien in the mobile home should be valued based upon the payment stream of the note underlying the lien, the trustee essentially makes the same “proceeds” argument made by the unsuccessful trustee in *Rubia*. When a trustee avoids a security interest in exempt property that the debtor retains, preservation of the lien for the estate does not equate to the trustee’s assuming the creditor’s in personam collection rights against the debtor. Moreover, to allow this trustee to assert a $12,000 lien position in what is, at best, property valued at $5,000 flies in the face of logic if the law is, as *Rubia* suggests, that the trustee’s interest can be no greater than that of the creditor from whom the trustee wrests the lien. As this Court concluded in *In re Trible*,[14] where the debtor seeks to retain and pay for collateral subject to a trustee’s preserved lien, it is appropriate to value that collateral in accord with the principles of § 506(a) as interpreted by the Supreme Court in *Rash*,[15] giving “paramount importance” to the proposed use and disposition of the property.[16]

What the trustee is entitled to receive on account of the preserved lien can be determined by an allocation of the payments between the trustee and NASB. This Court dealt with a similar situation in *Trible*. In that case, the trustee avoided the creditor’s lien on a mobile home that the debtor intended to continue to inhabit. The parties presented evidence concerning the relative values of the home and the land upon which the creditor maintained its mortgage. After determining the

---

[13] *Id.* at 328, n. 5.

[14] *Morris v. Citifinancial (In re Trible)*, 290 B.R. 838 (Bankr. D. Kan. 2003).

[15] *Assoc. Commercial Corp. v. Rash*, 520 U.S. 953 (1997).

[16] *In re Trible*, 290 B.R. at 849.

fair market value of the land and home in accordance with the principles of the *Rash* decision, the Court ordered that the debtor's payments be prorated between creditor and trustee based upon the relative value of the land and home. In essence, the Court hypothesized a secured claim held by the trustee and allowed in the amount of the value of the home and a separate secured debt retained by the creditor and allowed in the amount of the value of the land. There is no reason a similar approach cannot be taken in this matter.

Here the trustee should be allowed a $5,000 secured claim in rem, the value of the mobile home. NASB is allowed a $20,000 secured claim secured by the land. NASB's allowed claim is $53,000 per debtors' Schedule D. As the debtors apparently desire to retain the home and pay the allowed claim, the trustee shall be permitted to recover 20 per cent of each monthly payment, the same to be applied to the $5,000 secured claim, until the trustee has collected the principal sum of $5,000. NASB's allowed secured claim shall be reduced by the value of the mobile home, $5,000, and it shall be permitted to collect 80 per cent of each monthly payment until its allowed claim (less $5,000) is paid in full. This differs from the relief granted the lender in *Trible* because the original debt here is significantly undersecured. While the debtors' personal obligation to NASB may be discharged, they cannot strip down NASB's claim in chapter 7 and NASB may require them to pay the allowed claim, reduced by the value of the mobile home, in full before releasing its mortgage on the land and other two outbuildings.[17]

The Court will enter Judgment for the Trustee in accord with the foregoing today.

# # #

[17] *See Dewsnup v. Timm*, 502 U.S. 410 (1992); 11 U.S.C. § 506(d).